## Wise *v.* Wise, Appellant.

*Partnership—Articles of partnership—Construction—Equity— Dissolution of partnership—Profits.*

At the hearing of a suit in equity for the dissolution of a partnership and for the payment of profits claimed by plaintiff, it appeared that plaintiff and defendants had entered into partnership under articles which provided that capital should be borrowed on the endorsements of each partner, that each partner should furnish capital "to the extent of his ability," that plaintiff should "see that the necessary funds shall be procured at six per cent. interest," that after paying all the debts and interest due, the profits of the firm should be divided equally to the extent of $36,000, each member receiving $12,000, and that profits in excess of $36,000 should be divided as therein provided for.   It further appeared that the profits exceeded $36,000, that plaintiff had contributed

$10,000, and with the other partners had raised various additional sums. Defendants contended that plaintiff had agreed to raise $100,000, which he had failed to do, that he had not individually procured any necessary funds for the partnership, that his failure so to do constituted a breach of the partnership agreement and resulted in a loss of $8,000, which defendants sought to set-off against plaintiff's possible claim. It appeared that plaintiff had failed to procure certain funds when requested, but there was no evidence of a wilful refusal on his part to supply any money, or of his culpable neglect to procure funds for the firm. The evidence relied upon by defendants was vague and general and consisted rather of conclusions and inference of fact, than of statements of actual events and occurrences. The lower court found upon competent evidence that plaintiff was not in default as to cash contributions, that the evidence did not show how much he was in default as to the money to be procured by endorsements, that there was no breach of contract on plaintiff's part such as defendants understood worked a dissolution of the partnership agreement, and granted the relief prayed for. *Held,* no error.

Argued March 9, 1914. Appeal, No. 244, Jan. T., 1913, by defendants, from decree of C. P. Northampton Co., Dec. T., 1912, No. 2, for plaintiff on bill in equity for the dissolution of a partnership, in case of Hiram Wise v. F. S. Wise and Jacob L. Snyder. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for the dissolution of a partnership and for other relief. Before STEWART, J.

The opinion of the Supreme Court states the facts.

The court on final hearing awarded the relief prayed for. Defendants appealed.

*Errors assigned* were various findings of fact and law of the trial judge and the decree of the court.

*H. M. Hagerman,* for appellants.

*Pennell C. Evans,* with him *Clarence Beck,* for appellees.

OPINION BY MR. JUSTICE MOSCHZISKER, March 30, 1914:

This was a bill in equity to dissolve a partnership and secure the payment of profits claimed to be due the plaintiff. The statement of questions involved and the printed argument of the appellants suggest but two controlling points for our consideration: (1) The question of an alleged breach by the plaintiff of "a covenant" in "the partnership" agreement, and its effect upon his right to recover profits; (2) The question of the right of the defendants to set-off damages claimed to have been occasioned by the plaintiff's alleged breach.

The plaintiff, Hiram Wise, and the defendant, F. S. Wise, are brothers, and the other defendant, J. L. Snyder, is in some way related to the latter; on May 16, 1904, they entered into written articles of copartnership, for the purpose of manufacturing timber from a tract of land in West Virginia, in which each of them had an interest; the agreement provided: "The capital for said partnership is to be borrowed on the endorsements of each partner and each one binds themselves to furnish capital to the extent of their ability. Each partner to receive interest at the rate of six per cent. per annum for whatever cash they furnish individually. It is the tenor of this agreement that J. L. Snyder shall manage the business at the mill for $100 per month and his share of the profits and shall devote his entire time to same. That Hiram Wise shall see that the necessary funds shall be procured at six per cent. interest, for his share of the profits, hereinafter to be mentioned. That F. S. Wise shall receive his share of the profits as the senior member of the firm and for the assistance given the firm both in the management and financially. After paying all debts and interest due, the profits of the firm shall be divided equally to the extent of $36,000, each member receiving $12,000, and any profits earned over the aggregate of $36,000 shall be divided one-third to J. L. Snyder and two-thirds to F. S. Wise." The plaintiff

contended that the profits exceeded $36,000, and that he was entitled to his share as per the agreement, less certain payments on account; while the defendants alleged that the plaintiff had in point of fact agreed to obtain upwards of $100,000, which he had failed to do, that he had not "individually" procured any necessary funds for the partnership, although repeatedly urged so to do, that his failure in this respect constituted a breach of the partnership agreement and compelled them "to sell green lumber for the purpose of raising money," at a loss amounting to $8,000, which they sought to set-off against any possible claim the plaintiff might have.

After hearing, the court below found that the partnership profits exceeded $36,000, that "the said partners individually raised various sums of money and paid same into the partnership funds as follows: Frank S. Wise, $11,200; Hiram Wise, $10,000; J. L. Snyder, $8,600, that the said Hiram Wise also indorsed various notes and procured the endorsement of other parties to various notes for moneys which were used in the operation of the said partnership"; further, that, while the plaintiff had failed to procure certain funds when requested by his copartners, particularly, the sum of $6,666.66, to pay a certain note which fell due on May 15, 1905, yet, "There is no evidence of a wilful refusal on plaintiff's part to supply any money, nor any evidence of culpable neglect on his part to procure necessary funds for the firm, and no notice given to him by either of the other partners at any time that they desired a dissolution of the partnership on this account, nor is there any evidence as to any amounts which would be needed for the firm's business having been agreed on prior to the signing of the contract or of any amount which the plaintiff was to furnish." The court refused to find that a loss had been suffered because of plaintiff's failure to raise needed money when requested so to do. On this state of facts, the chancellor concluded that the partnership still existed, and that there had been no such breach of

contract by the plaintiff as would deprive him of his share of the profits; further, that the partnership should be dissolved and the plaintiff paid an amount found to be due him, without interest. A decree was entered accordingly, and the defendants have appealed.

We have read the evidence and considered the able argument of counsel for the appellants, but are not convinced of error. The learned judge who tried the case truly says that the testimony depended upon by the defendants was so vague and general and consisted so largely of "conclusions" or declarations of what they personally "understood" or "considered," rather than of statements of things that had occurred, or alleged facts, that it failed to "add any more information as to what Hiram Wise was to do than was furnished by the agreement itself," nor did it prove the defendant's averments as to the obligations undertaken to be performed by the plaintiff, or properly or definitely show the damages asserted to have resulted from his alleged defaults. In discussing the case, the chancellor states, "It plainly appears that each one of these partners was expected to furnish capital both in cash and by endorsements. The measure of capital was not given in figures, but was made indefinite by the use of such terms as 'extent of their ability' and 'necessary funds.' It is obvious that if either of the defendants had in mind definite figures, he should have had them inserted in the agreement. As our findings of fact show, so far as individual cash contributions are concerned, Hiram Wise could not be said to be in default, nor is there anything in the evidence which shows definitely how much he was in default as to the money to be procured by endorsements......It is plain that there was no breach of contract on Hiram's part such as the other partner's understood worked a dissolution of the agreement, nor is there anything in the evidence that shows that they intended at the time, to take advantage of Hiram's alleged failure to furnish money. ......Where there is nothing in the evidence going to

show that these partners regarded anything done by, Hiram in the spring of 1905 as sufficient to decree a dissolution at that time, we cannot treat the matter now as equivalent to a dissolution nunc pro tunc, and penalize Hiram for his alleged defaults by surcharging him in this final settlement." The appellant contends that the chancellor did not give proper consideration to certain testimony concerning a conversation between the plaintiff and one of the defendants in which the latter is alleged to have given notice to the former of a dissolution of the partnership because of his failure to raise money when requested. We have examined the evidence in question and agree with the court below that, "even if the defendant did have that conversation with the plaintiff it could not be construed as a notice of dissolution"; in other words, the alleged notice was entirely too vague and indefinite to have that effect. Moreover, the plaintiff entered an explicit denial of the defendant's version of the conversation.

None of the eighteen assignments of error is in proper form (See Prenatt v. Messenger Printing Co., 241 Pa. 267) ; however, we have considered all the matters essential to the points presented by the appellant's argument, and find no reversible error. The assignments are dismissed and the decree is affirmed at the cost of the appellants.